UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

INTEVA PRODUCTS, LLC.

    Plaintiff,

vs.

REINFRO, LLC

    Defendant,

Case No. 23-cv-12269
Honorable

**VERIFIED COMPLAINT FOR BREACH OF CONTRACT,
INJUNCTIVE AND OTHER RELIEF**

Plaintiff Inteva Products, LLC ("Inteva") complains against defendant Reinfro, LLC ("Reinfro") as follows:

## SUMMARY OF ACTION

1. Inteva is a tier 1 automotive supplier of engineered components and systems for the automotive industry, including closure systems, interior systems, and motors and electronics.

2. Reinfro is a tier-2 outside processor that provides plating and painting services. That is, it plates parts with zinc-nickel or zinc-iron or electronically paints (e-coating) the parts for use in products and assemblies Inteva manufactures for the automotive industry.

3. Inteva purchases more than one hundred different plated or e-coated parts (the "Products") from Reinfro, and uses the Products in various components it

manufactures for several different automotive original equipment manufacturers ("OEMs"), such as General Motors and Volkswagen.

4. Reinfro provides the Products under fixed-price requirements contracts, based on Inteva purchase orders, that are valid through various dates for the different Products, the vast majority expiring December 31, 2025 or December 31, 2026. However, Reinfro refuses to honor the agreements and has refused to continue supplying the Products after September 9, 2023, unless Inteva increases the prices paid for all the Products.

5. Moreover, in this case, it is not possible for Inteva to pay the price increase under protest, and seek to recover the improperly demanded price increase in a breach of contract action. Reinfro informed Inteva that it will not accept Inteva paying the demanded price increase under protest or otherwise reserving its rights. Thus, under threat of severe financial consequences, Reinfro threatens to deprive Inteva of its contract rights and any legal remedy, in addition to extorting improper price increases.

6. Reinfro is fully aware of the disastrous consequences that would result from its failure to continue supplying the Products: failure to provide Products to Inteva will shut down its production, as soon as 3-5 days after Reinfro's failure to deliver parts. Due to the just-in-time production model most OEMs follow, a

shutdown of production at Inteva will be followed quickly by a shutdown of production at Inteva's OEM customers.

7. Therefore, Inteva seeks temporary, preliminary and permanent injunctions requiring Reinfro to comply with its contractual obligations. Reinfro agreed that such relief would be appropriate if it threatened to halt delivery of its Products.

8. Temporary and preliminary injunctive relief is warranted here. Inteva will certainly prevail on the merits of its claims, Inteva will suffer irreparable injury if Reinfro does not perform as promised, the harm Reinfro has threatened eclipses the harm Reinfro would suffer under the injunction Inteva seeks, and the public interest favors issuance of the injunction Inteva seeks.

## PARTIES, JURISDICTION AND VENUE

9. Inteva is a Delaware limited liability company with its headquarters at 1401 Crooks Road, Troy, MI 48084. Its sole member is The Renco Group, Inc., a New York corporation with its principal place of business in New York. For purposes of diversity jurisdiction, Inteva is a citizen of New York.

10. Reinfro is a Texas limited liability company, organized on August 30, 1996. Its registered agent address is 943 N. Expressway. #15-192A Brownsville, TX 78520-9551. It also has a mailing address of 1225 N. Expressway, Suite C1-192A,

Brownsville, TX 78520, and other facilities in Olmito, Texas and Matamoros, Mexico.

11. Upon information and belief, Reinfro's sole members are Abelardo and Raul Gonzalez, who are both citizens of Texas[1]. Thus, Reinfro is a citizen of Texas.

12. The amount in controversy exceeds $75,000, exclusive of interest and costs.

13. This Court has original subject matter jurisdiction over this action under 28 U.S.C. § 1332. There is complete diversity between the parties because this dispute is between a plaintiff that is a citizen of New York and the defendant is a citizen of Texas[2]. Also, the amount in controversy exceeds $75,000.

14. This Court has personal jurisdiction over the defendant because it specifically consented to the personal jurisdiction of this Court in the contract at issue and it conducts business within the state of Michigan.

---

[1] Reinfro's web site claims it is a subsidiary of Abyra Group Inc., which is a Texas corporation with its principal place of business at 150 Dreamway, Brownsville, TX 78526. Thus, if Abyra Group is a member of Reinfro, it does not change the citizenship analysis. Reinfro is a Texas citizen.

[2] It is possible that one or more of Reinfro's members is a citizen of Mexico but, if so, that would not defeat diversity of citizenship, as this would be an action between a plaintiff that is a citizen of New York and a defendant that is a citizen of Texas and/or a foreign state (Mexico).

15. Venue is also proper before this Court under 28 U.S.C. § 1391(b)(3) because defendant is subject to this Court's personal jurisdiction.

16. This matter is otherwise within this Court's jurisdiction.

## BACKGROUND

17. Inteva is a global supplier of engineered components and systems for the automotive industry, including closure systems, interior systems, and motors and electronics. Its customers include all the major automotive OEMs.

18. Reinfro is a metal finishing company that plates parts with zinc-nickel or zinc-iron, or it e-coats them. Automotive customers are a significant portion of Reinfro's business.

19. The parties' contract was formed when Inteva issued purchase orders UM2000011, UM2000729, UM2000730 and UM2000731 (collectively, "the Purchase Orders"; Exhibit A[3]) to Reinfro and Reinfro accepted them. The Purchase Orders cover more than 100 Products.

20. The Purchase Orders incorporate the Inteva General Terms and Conditions (the "Inteva Terms"; Exhibit B) by reference and the Inteva Terms provide that a supplier accepts a purchase order when it begins performing under it

---

[3] Pricing has been redacted from the exhibits because it is confidential business information. Defendant has unredacted copies of these exhibits and Inteva can deliver unredacted copies to the Court.

5

without objecting to the terms of the purchase order in writing within ten (10) days. (See Inteva Terms, §1.)

21. Reinfro has performed under the Purchase Orders without objecting to their provisions within the prescribed ten (10) days. It has thus accepted the Purchase Orders (and all provisions incorporated by reference into the Purchase Orders) and is legally bound to them.

22. The Purchase Orders, the Inteva Terms and the Inteva Supplier Requirements Manual (the "Manual," which is also incorporated by reference; Exhibit C) are the sole memorialization of the parties' contractual rights and obligations to each other concerning supply of the Products.

23. Under the Purchase Orders, Reinfro is obligated to supply the Products at the agreed-upon price for the terms specified in the Purchase Orders. For the Products in question, the Purchase Orders last through the end of 2025 or 2026, depending on the Product.

24. Further, Reinfro is Inteva's sole source for the Products. Inteva cannot obtain adequate, approved replacements in time to avoid the damages and disruption that will ensue from Reinfro's refusal to deliver the Products. Inteva would need nine to twelve months to identify a replacement supplier, validate its production processes and commence production at the replacement supplier.

25. In early 2023, Reinfro requested price increases on the Products that would have resulted in Inteva paying an additional $200,000 for the Products on an annual basis. Reinfro claimed the price increases were necessary to offset increases in the cost of chemicals Reinfro had to purchase to coat and process the Products.

26. Inteva requested backup documentation for the cost increases Reinfro alleges, but Reinfro has not shared this information or the other financial information Inteva requested (and is entitled to receive under the Purchase Orders and Inteva Terms). Thus, Inteva was not willing to change the pricing under the Purchase Orders, to which Reinfro had agreed and to which it was contractually bound.

27. In June 2023, Reinfro sought even higher increased prices from Inteva for the Products. At this point, Reinfro was demanding new pricing that would have resulted in Inteva paying an additional $400,000 on an annual basis.

28. Finally, in August 2023, Reinfro raised its demand again, seeking a total of $600,000 above the Purchase Order pricing, on an annual basis. The percentage price increase Reinfro is demanding varies from Product to Product, ranging from 7% to as much as 582%.[4] A chart created by Reinfro showing the price demands is attached hereto as Exhibit D.

---

[4] For one of the more than one hundred Products, the demanded price would constitute a price decrease.

29. Reinfro has stated it would cease ordering chemicals Reinfro needs for the Products and cease delivering them after September 8, 2023. An email thread between Inteva and Reinfro discussing Reinfro's subsequent demands and its deadline of September 8, 2023 is attached hereto as Exhibit E.

30. Additionally, Reinfro has informed Inteva that it will not honor a new purchase order under which Inteva reserves its rights or indicates it is paying under protest. It specifically explained that it was requiring Inteva to give up any legal right to enforce the pricing terms of the Purchase Orders.

31. Reinfro seeks to exploit the "just-in-time" mode of production under which tier 1 suppliers like Inteva require an uninterrupted flow of products from their suppliers shortly before these products are needed for use in the parts the tier-1 is making for its customers.

32. In turn, Inteva's OEM customers require a steady supply of parts and systems from Inteva just in time to be used for the OEM's vehicle production. Any interruption of supply from Inteva's suppliers will very quickly interrupt Inteva's production, which will shortly afterwards interrupt production by Inteva's OEM customers including GM.

33. In this case, Reinfro has threatened to cease deliveries as of September 9, 2023. This will begin shutting down production at Inteva within 3-5 days. Shortly

thereafter, production will shut down at the facilities of OEMs who depend on the parts and assemblies for which Inteva needs the Products from Reinfro.

34. The effects of an interruption in supply would also flow down the supply chain as well. Interruption of production at Inteva and its OEM customers would also idle the other suppliers whose parts or components go into the affected vehicle lines.

35. Reinfro's timely delivery of the Products is a material obligation under the parties' agreements. The Inteva Terms specifically provide: "Supplier will deliver Products and Services in strict accordance with the Contract terms. Time is of the essence with respect to all delivery schedules Purchaser establishes." (Inteva Terms, §5).

36. Under the Purchase Orders, Reinfro specifically agreed:

> Supplier acknowledges and agrees that money damages would not be a sufficient remedy for any actual, anticipatory or threatened breach of the Contract by Supplier with respect to its delivery of Products to Purchaser and that, in addition to all other rights and remedies which Purchaser may have, Purchaser shall be entitled to specific performance and injunctive or other equitable relief as a remedy for any such breach. (Inteva Terms, §35).

37. Because the financial losses that would result from Reinfro's threatened refusal to produce and ship the Products would be incalculable, and because Reinfro is requiring Inteva to surrender its rights to enforce the agreed-upon pricing terms, Inteva has no adequate remedy at law. As Reinfro agreed under the Purchase Orders,

9

Inteva is entitled to injunctive relief compelling Reinfro to manufacture and deliver the Products.

## COUNT I
## INJUNCTIVE RELIEF

38. Inteva incorporates all prior paragraphs of its complaint as if set forth here fully.

39. Reinfro accepted the Purchase Orders and performed under them. Thus, the Purchase Orders are valid, binding contracts that include the Inteva Terms.

40. Reinfro's threat to cease producing and delivering the Products would cause incalculable financial losses, including the loss of customer goodwill and disruption of OEM automotive production.

41. Additionally, Reinfro's demand the Inteva relinquish its contractual rights as a condition of resuming supply would leave Inteva without a contractual remedy and constitutes an additional irreparable injury.

42. Inteva, therefore, has no adequate remedy at law for the consequences that would ensue if Reinfro carries out its threat.

43. Under the Purchase Orders, Reinfro agreed that Inteva would be entitled to injunctive relief to avoid such consequences. (Inteva Terms, §35).

44. Inteva is entitled to temporary, preliminary and permanent injunctive relief. In addition to Reinfro's agreement to the issuance of such relief:

    a.    Inteva is likely to succeed on the merits of its claim that Reinfro has repudiated that Purchase Orders and that its threatened refusal to produce and deliver the Products is a material breach of the Purchase Orders (See Count II, Breach of Contract) ;

    b.    Inteva is likely to suffer irreparable injury in the form of loss of contractual rights and any remedy at law, and/or incalculable financial losses, the loss of customer goodwill and disruption of the automotive supply chain;

    c.    The harm Inteva would suffer without injunctive relief greatly outweighs the harm that issuance of such an injunction would cause to Reinfro, which would merely be compelled to perform the Purchase Orders, to which it freely agreed.

    d.    The public interest greatly favors enforcing contractual obligations and avoiding the supply chain disruption Reinfro has threatened, which would affect many other suppliers and their employees.

45. Temporary and preliminary injunctive relief is necessary to preserve the status quo pending a trial on the merits of Inteva's claim.

WHEREFORE, Inteva requests that the Court issue temporary, preliminary and permanent injunctions requiring Reinfro to continue performing its obligations

under the Purchase Orders, including the production and delivery of the Products to Inteva.  Inteva also seeks an award of any damages it suffers because of Reinfro's breach and repudiation of its contractual obligations, as well as reasonable attorneys' fees and costs in this action, as provided in the Inteva Terms.

## COUNT II
## BREACH OF CONTRACT

46.     Inteva incorporates all prior paragraphs of its complaint as if set forth here fully.

47.     As discussed above, the Purchase Orders are valid agreements between Inteva and Reinfro, binding on Reinfro.

48.     Reinfro's repudiation of the Purchase Orders as described above and its threatened refusal to produce and deliver the Products are material breaches of the Purchase Orders.

49.     Reinfro's repudiation and threatened refusal will proximately cause substantial damages to Inteva. The damages would be incalculable, however to the extent they are calculable, Inteva is entitled to recover such damages from Reinfro on account of its breach of the Purchase Orders.

50.     In addition, Reinfro agreed that it is liable for the financial losses Inteva would suffer due to Reinfro's breach. Section 27 of the Inteva Terms, specifically provides that Inteva may recover any "direct and indirect losses, costs and damages

resulting from Supplier's failure to timely deliver Products or Services," among other recoverable losses or costs.

51. Also, under the Inteva Manual, if Inteva's and/or its customer's production is delayed or interrupted by Reinfro's failure to deliver contracted goods within the terms of the contract, all costs that are incurred by Inteva and/or its customers will be Reinfro's sole responsibility. (Manual, §4.7)

WHEREFORE, Inteva requests that the Court enter a judgment in favor of Inteva and against Reinfro for the amounts by which Inteva is damaged due to Reinfro's breach of the Purchase Orders, together with plus interest, reasonable attorneys' fees and costs in this action.

                    Respectfully submitted,

                    BODMAN PLC

                    By:/s/Jeffrey G. Raphelson
                        Jeffrey G. Raphelson (P38036)
                        Emily A. Cross (P85911)
                        6th Floor at Ford Field
                        1901 St. Antoine Street
                        Detroit, Michigan 48226
                        (313) 259-7777

September 5, 2023            Attorneys Inteva Products, LLC

## VERIFICATION

Diwakar Prasad, under penalty of perjury, declares that:

I am employed by Inteva Products, LLC as Director of Purchasing – North America. I have examined the records of Inteva Products, LLC with respect to its requirements contract with Reinfro and based on that review and my personal knowledge verify the facts contained in this Verified Complaint to the best of my knowledge, information and belief.

By: _____
Diwakar Prasad,
Director of Purchasing – North America,
Inteva Products, LLC

Dated: September 5, 2023